# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  06-20078-JWL** |
| | ) | **11-2062-JWL** |
| **JASON McKINNEY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On June 21, 2006, Jason McKinney was charged with possession with intent to distribute at least 50 grams of crack cocaine, using or possessing a firearm in connection with drug trafficking, and being a convicted felon in possession of a firearm (doc. 1).  On September 14, 2006, a superseding indictment was filed against Mr. McKinney and a co-defendant, charging Mr. McKinney with the same three counts and adding two additional drug counts for conduct occurring on August 24, 2006 (doc. 2).  The Government filed a notice of its intent to seek an increased sentence based on a single prior drug conviction, which would impose a statutory mandatory minimum sentence of 20 years for Count 1 (doc. 36).  The Government then filed an amended information identifying a second prior drug offense, which would increase defendant's mandatory minimum sentence to life imprisonment (doc.

61).  On June 21, 2007, Mr. McKinney pleaded guilty to the first two offenses with

which he was charged (docs. 66, 68-70).

    The plea agreement noted that the two offenses together carried a mandatory

minimum sentence of 25 years imprisonment.  In exchange for Mr. McKinney's plea

of guilty and other promises, the Government agreed to dismiss the remaining three

charges, to recommend a sentence at the low end of the applicable guideline range, to

recommend a two-level reduction under the sentencing guidelines for acceptance of

responsibility, and to withdraw the amended notice of the second prior drug

conviction, which would otherwise subject defendant to a mandatory minimum life

sentence (doc. 70).  The agreement stated that Mr. McKinney understood that he was

fully satisfied with his attorney's advice and representation; that the agreement was

true and accurate and not the result of any threats, duress, or coercion; that there were

no other terms of the agreement between the parties; and that defendant was entering

into the agreement and pleading guilty because he is guilty and was doing so freely

and voluntarily (*id.*).  In his sworn plea petition, Mr. McKinney represented that he

was guilty of the offenses to which he was pleading; that he was satisfied with his

attorney's advice and assistance; and that his plea was free and voluntary and not the

result of any force or threats or promises other than those noted in the petition (doc.

69).

    At the hearing at which Mr. McKinney entered his plea, the Court engaged in

a colloquy with defendant (doc. 216).  Mr. McKinney represented under oath that he

2

was fully satisfied with his attorney's advice and representation; that no one had made any promises, apart from those in the agreement, or threats to induce his plea; that he was entering the plea freely and voluntarily; and that he was in fact guilty of the charges to which he was pleading (*id.* at 130-141).

During the plea colloquy, Government counsel informed the Court that she had learned that defendant "had engaged in obstructive behavior" including threatening witnesses, and that Mr. McKinney had been placed in segregation at the facility where he was held pending the resolution of his case as a result.  The Court confirmed with Mr. McKinney that he did not plead guilty because of any pressure or coercion relating to the segregation.  The Court concluded the hearing by accepting Mr. McKinney's guilty plea and finding that the plea was knowing and voluntary.

After the plea colloquy, the Government informed defendant that it had evidence that defendant had threatened harm not only to witnesses in his case, but also to the prosecutor.  Mr. McKinney failed a polygraph test administered by the Government concerning whether he made the threats to the safety of witnesses and the prosecutor.  In light of the evidence of the threats and defendant's failed polygraph, the Government limited defendant's ability to obtain a U.S.S.G. § 5K1.1 motion unless Mr. McKinney was truthful about making threatening remarks toward witnesses and the prosecutor in his case.

Mr. McKinney moved to discharge his attorney and have a new attorney

appointed (doc. 82).[1]  On November 14, 2007, Mr. McKinney's new attorney filed a

motion to withdraw his plea arguing, in part, that Mr. McKinney's plea occurred as a

result of "pressure, coercion and/or duress by his former counsel" (doc. 96).  The

Court conducted an evidentiary hearing on the motion at which Mr. McKinney's

prior attorney testified (docs. 104, 217).  Based on testimony at the hearing and from

observations in open court, the Court concluded that Mr. McKinney's prior attorney

offered sincere advice with the goal of "achieving what was in Mr. McKinney's best

interests" (doc. 217, at 123).  The Court further found that Mr. McKinney's prior

attorney "did not pressure Mr. McKinney into entering into a plea in a sense that

would allow Mr. McKinney to withdraw his plea" (*id.* at 124).  After receiving

supplemental briefing from both parties, the Court denied Mr. McKinney's motion to

withdraw his guilty plea, determining that the plea was knowing, voluntary, and

intelligent and that defendant should otherwise not be permitted to withdraw his plea

pursuant to Rule 11(d)(2) of the Federal Rules of Criminal Procedure (doc. 133).

    Mr. McKinney filed a pro se motion to dismiss the indictment for ineffective

assistance of counsel (docs. 177-78).  At a hearing held on February 25, 2009, Mr.

McKinney again argued before the court that his plea should be withdrawn because

he was "pressured" to plead guilty by his prior attorney (doc. 218, at 75).  The Court

---

[1] Mr. McKinney was represented by five different attorneys during the course of his case.  For purposes of his § 2255 petition, Mr. McKinney seems to claim that only his second attorney and fifth attorney were ineffective in their representation.

stated that "all the concerns about you being pressured into your plea, etc., have been considered by the court and rejected," and because Mr. McKinney offered no new arguments, his pro se motion was denied (*id.*).  On March 6, 2009, Mr. McKinney was sentenced to 420 months imprisonment (doc. 195).  He filed a notice of appeal on March 9, 2009 (doc. 198).  On February 24, 2010, the Tenth Circuit affirmed the district court's denial of the Mr. McKinney's motion to suppress and motion to withdraw his guilty plea (doc. 220).

Mr. McKinney's case is once again before this court on a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (docs. 224, 230).  Mr. McKinney offers an array of arguments, which can be divided into three categories: (1) prosecutorial misconduct by violating the Speedy Trial Act with a superseding indictment and by inducing a guilty plea through threats and intimidation; (2) ineffective assistance of trial counsel for failure to challenge a superseding indictment brought in violation of the Speedy Trial Act, allowing prosecutorial misconduct, failure to obtain exculpatory evidence held by the prosecution in violation of *Brady v. Maryland*, not attending a polygraph examination of the defendant, not conducting a "proper investigation," not speaking with witnesses, inducement of Mr. McKinney's guilty plea, and instructing Mr. McKinney "to merely answer yes to all questions ask[ed] of him" during the change of plea colloquy; and (3) ineffective assistance of appellate counsel for failure to "examine, and execute and perfect a[n] effective appeal" by failing to use "any of the cases" sent by Mr. McKinney to counsel, failing

5

to "really read and stud[y] the transcripts," and failing to advance several "very crucial constitutional issues."  In response (doc. 233), the Government asks this court to enforce the plea agreement Mr. McKinney signed, which included a waiver of Mr. McKinney's right to challenge his sentence on collateral attack on all issues raised in the § 2255 petition, except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1181 (10th Cir. 2001).  To the extent Mr. McKinney has not waived his right to claim ineffective assistance of counsel concerning his decision to enter a plea and the negotiation of his plea agreement, the Government contends that Mr. McKinney does not satisfy the two-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).  For the reasons set forth below, Mr. McKinney's § 2255 motion (docs. 224, 230) is denied in part and dismissed in part.

## DISCUSSION

### 1.  Enforcement of Plea Agreement

The court will hold a defendant and the government to the terms of a lawful plea agreement.  *United States v. Arevalo-Jimenez*, 372 F.3d 1204, 1207 (10th Cir. 2004); *United States v. Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1998).  Thus, a knowing and voluntary waiver of § 2255 rights in a plea agreement is generally enforceable.  *Cockerham*, 237 F.3d at 1181.  The Tenth Circuit has adopted a three-pronged analysis for evaluating the enforceability of such a waiver in which the court must determine: (1) whether the disputed issue falls within the scope of the waiver, (2) whether the defendant knowingly and voluntarily waived the rights, and (3)

6

whether enforcing the waiver would result in a miscarriage of justice.  *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam).

## A.      Scope of the Waiver

In determining whether the disputed issue falls within the scope of the waiver, the court begins with the plain language of the plea agreement.  *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004); *Hahn*, 359 F.3d at 1328.  The provision in the plea agreement by which Mr. McKinney waived his right to challenge his sentence through collateral attack states as follows:

> The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence, except as to the issues raised in the defendant's pretrial motion to suppress evidence and preserving any future issues that might arise under legislative or case law changes regarding differences between powder cocaine and crack cocaine.  The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed.  By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court.  The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2) and a motion brought under Fed. Rule of Civ. Pro. 60(b).  In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court.

The plea agreement is construed "according to contract principles and what the defendant reasonably understood when he entered his plea."  *Arevalo-Jimenez*, 372

F.3d at 1206 (internal quotation and citations omitted).  The court strictly construes the waiver and resolves any ambiguities against the government and in favor of the defendant.  *Hahn*, 359 F.3d at 1343.

Bearing these principles in mind, Mr. McKinney clearly waived the right to challenge his claims of (1) prosecutorial misconduct by violating the Speedy Trial Act with a superseding indictment and by inducing a guilty plea through threats and intimidation; (2) ineffective assistance of trial counsel for allowing prosecutorial misconduct, failure to obtain exculpatory evidence held by the prosecution in violation of *Brady v. Maryland*, not attending a polygraph examination of the defendant, not conducting a "proper investigation," and not speaking with witnesses; and (3) ineffective assistance of appellate counsel for failure to "examine, and execute and perfect a[n] effective appeal."  These arguments all fall within the scope of the waiver.  However, Mr. McKinney's ineffective assistance claim concerning his decision to plead guilty and negotiation of the plea agreement arguably fall within *Cockerham*, and the Court discusses those claims more fully below.

**B.**      ***Knowing and Voluntary***

Mr. McKinney contends that his waiver was not, in fact, voluntary because he was induced to plead guilty through "threats, duress, coercion, and [] promises by his Attorney and Prosecutor."  Specifically, Mr. McKinney claims he was "placed into Administrative Segregation (hole) for not accepting the plea" and his attorney pressured him to accept the plea.  To the extent Mr. McKinney asserts that his

8

counsel was ineffective in connection with the plea, the court will address those arguments below in connection with the miscarriage-of-justice prong of the *Hahn* analysis.  Putting those arguments aside, the record reflects that Mr. McKinney's waiver was knowing and voluntary.

In assessing the voluntariness of a defendant's waiver, the court looks primarily to two factors—whether the language of the plea agreement states that the defendant entered the plea agreement knowingly and voluntarily and whether there was an adequate Rule 11 colloquy.  *See United States v. Smith*, 500 F.3d 1206, 1210-11 (10th Cir. 2007).  Both conditions are satisfied here.  Paragraph 11 of Mr. McKinney's plea agreement expressly states that he "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence, except as to the issues raised in the defendant's pretrial motion to suppress evidence and preserving any future issues that might arise under legislative or case law changes regarding differences between powder cocaine and crack cocaine."  *See United States v. Leon*, 476 F.3d 829, 834 (10th Cir. 2007) (concluding that a defendant did not meet the burden of showing that the waiver was unknowing and involuntary in part because plea agreement contained broad waiver that defendant "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence").

In addition, during the Rule 11 colloquy, Mr. McKinney indicated that he entered his guilty plea freely and voluntarily and that no one induced him to plead

9

guilty.  The court specifically inquired whether there was anything about the fact that Mr. McKinney had been placed in segregation that made him feel coerced to plead guilty.  Mr. McKinney indicated that he had not been coerced to plead guilty by being placed in segregation and had, in fact, been put "in the hole" due to allegations that he had threatened witnesses in his case.

Thus, the court finds that Mr. McKinney's plea was voluntarily entered into without any impermissible inducement.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court [affirming a plea agreement] carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

## C.    *Miscarriage of Justice*

Enforcing a waiver results in a miscarriage of justice only if (1) the district court relied on an impermissible factor such as race, (2) the defendant received ineffective assistance of counsel in conjunction with the negotiation of the waiver, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful in the sense that it suffers from error that seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Hahn*, 359 F.3d at 1327.

Mr. McKinney makes no suggestion that the court relied on an impermissible factor such as race, that his sentence exceeds the statutory maximum, or that the waiver is otherwise unlawful.  He does, however, suggest that his attorney was

ineffective in the context of his decision to plead guilty, negotiating the waiver in his plea agreement, and execution of his change of plea, each situations arguably excluded from the waiver executed by him. *See Cockerham*, 237 F.3d at 1187 (Defendant cannot waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver.). Although excluded from the waiver, Mr. McKinney nonetheless cannot establish that his attorney's performance was constitutionally deficient.

The constitutional right to effective assistance of counsel is defined in *Strickland v. Washington*, 466 U.S. 668 (1984).  To obtain habeas relief, a petitioner must establish both that his attorney's representation was deficient, measured against an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different, thereby constituting prejudice to the petitioner.  *See id.* at 687, 688, 694.

First, Mr. McKinney contends that he received ineffective assistance of counsel in connection with his decision to plead guilty.  Specifically, he asserts that his counsel neglected to challenge the superseding indictment, which he considers was brought in violation of the Speedy Trial Act.  The record, however, shows that the superseding indictment was issued less than one week after Mr. McKinney was arrested and before Mr. McKinney made a single appearance on the original indictment.  Thus, there was no violation of the Speedy Trial Act, and Mr. McKinney's attorney was not deficient for failing to challenge the superseding

indictment.

Second, according to Mr. McKinney, his attorney was ineffective for pressuring him to plead guilty.  Specifically, Mr. McKinney alleges his attorney told him to cooperate "if he ever wanted to see his kids" and that if he failed to cooperate "the prosecutor would accomplish making sure [he] receive[d] a life sentence."  Mr. McKinney draws these statements from a portion of his former attorney's testimony at a hearing conducted by this Court to determine if Mr. McKinney was improperly induced to plead guilty.  Based on testimony at the hearing and from observations in open court, the Court found that Mr. McKinney's prior counsel offered sincere advice with the goal of "achieving what was in Mr. McKinney's best interests."  In addition, his attorney's advice was an accurate reflection of the circumstances Mr. McKinney faced: The statute under which the defendant was charged, along with the filing of the information concerning his second prior drug offense, subjected him to a mandatory minimum sentence of life imprisonment, and the plea agreement permitted him to avoid mandatory life imprisonment.  Thus, Mr. McKinney's attorney was not deficient by warning his client that he could receive life in prison if he were to go to trial.

In addition, Mr. McKinney contends that his attorney pressured him to accept the guilty plea by "ma[king] reference to a case in the state of Oklahoma, that could be resolved if he would just cooperate and take the plea."  Mr. McKinney's assertion misrepresents his attorney's actual testimony.  Mr. McKinney's attorney instead

testified that he encouraged his client to take the plea in this case to avoid the imposition of a life sentence.  He cautioned his client that "even if you cooperate here, we still have [the Oklahoma case]. . . I'll try to work on that Oklahoma case." The language of the plea agreement also contradicts Mr. McKinney's claims. Paragraph fifteen of the plea agreement states that "defendant understands this plea agreement binds only the defendant and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority."  Thus, Mr. McKinney's assertion that his attorney promised to resolve his Oklahoma case if he would enter a guilty plea here is contradicted by the record and without merit.

In addition, Mr. McKinney makes no attempt to argue that but for counsel's alleged inducement, he would not have pleaded guilty and would have instead proceeded to trial.  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Thus, he cannot demonstrate any prejudice and cannot establish the second prong of *Strickland*.

Third, Mr. McKinney asserts that prior to his entering his guilty plea, his attorney was ineffective for instructing him "to merely answer yes to all questions ask[ed] of him so not to intimidate the judge."  Mr. McKinney makes no attempt to explain how this purported advice influenced the outcome of his case.  Specifically, Mr. McKinney does not allege that he answered any of the court's questions untruthfully.  Moreover, the record from the hearing shows that Mr. McKinney, in fact, did not answer "yes" to a number of the court's questions.  For example, when

asked whether anyone had induced him to plead guilty, Mr. McKinney replied, "No,

sir."  When asked whether anyone forced or threatened Mr. McKinney or his family

in any way to get him to plead guilty, he replied, "No, sir."  Mr. McKinney's third

ineffective assistance claim fails because he has not alleged, much less shown, any

prejudice.  Thus, Mr. McKinney cannot satisfy the second prong of *Strickland.*

Without some finding that Mr. McKinney's attorney's performance was

constitutionally deficient or that any alleged deficiency resulted in prejudice to Mr.

McKinney, the court cannot find that enforcing the waiver would be a miscarriage of

justice.

**D.    *Conclusion***

Having concluded that the waiver contained in Mr. McKinney's plea

agreement was knowing and voluntary and that enforcing it will not result in a

miscarriage of justice, the court grants the government's request to enforce the waiver

and dismisses Mr. McKinney's § 2255 petition.

**2.    Certificate of Appealability**

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255

Proceedings states that the court must issue or deny a certificate of appealability

when it enters a final order adverse to the applicant.  "A certificate of appealability

may issue . . . only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2).[2]  To satisfy this standard, the movant

must demonstrate that "reasonable jurists would find the district court's assessment of

the constitutional claims debatable or wrong."  *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3

(10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)).  For the

reasons stated above, Mr. McKinney has not made a substantial showing of the denial

of a constitutional right. The court therefore denies a certificate of appealability.


      **IT IS THEREFORE ORDERED BY THE COURT** that Mr. McKinney's

Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255

(docs. 224, 230) is **denied** with respect to his ineffective assistance in the decision to

plead guilty and the negotiation of the plea agreement claims and **dismissed** as to all

other parts.


      **IT IS SO ORDERED** this 2nd day of September, 2011.

---

      [2] The denial of a § 2255 motion is not appealable unless a circuit justice or a
circuit or district judge issues a certificate of appealability. *See* Fed. R. App. P. 22(b)(1);
28 U.S.C. § 2253(c)(1).

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

16