IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**United States of America,**

        **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 06-20078-JWL**

**Jason McKinney,**

        **Defendant.**

## MEMORANDUM & ORDER

In June 2007, defendant Jason McKinney pled guilty to one count of possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 841(b)(1)(A)(iii) and one count of use of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). At Mr. McKinney's sentencing hearing in March 2009, the court calculated a base offense level of 38 after converting quantities of cocaine and cocaine base to more than 56,000 kilograms of marijuana. Mr. McKinney then received a two-level reduction pursuant to Application Note 10(D) of U.S.S.G. § 2D1.1 because the offense involved cocaine base and another controlled substance, bringing the offense level to 36. Ultimately, the court calculated an adjusted offense level of 42 after applying a four-level enhancement under U.S.S.G. § 3B1.1(a) based on Mr. McKinney's role in the offense and a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. With a criminal history category of V, the guidelines provided a sentencing range of 360 months to life. The court sentenced Mr. McKinney to 360 months imprisonment on the first count and 60 months imprisonment on the second count, to run consecutively, for a total

term of 420 months.[1]  He is presently incarcerated at FCI La Tuna and his projected release date is July 28, 2036.

In February 2019, Mr. McKinney filed a motion for sentence reduction under § 404 of the First Step Act (doc. 357).  The court denied the motion, concluding that a reduction was not appropriate because the new statutory minimum for Mr. McKinney's crack-cocaine offense did not affect Mr. McKinney's sentence; Mr. McKinney's guidelines range was well above the new statutory minimum.  The Circuit reversed that decision and remanded for further proceedings on the grounds that it was unclear whether the court "viewed Mr. McKinney's unchanged Guidelines range as being just one relevant factor to consider or as being the solely dispositive factor in its denial of relief."  *United States v. McKinney*, 859 Fed. Appx. 256, 259 (10th Cir. 2021) ("we lack sufficient knowledge regarding the variables that the court took into account—as well as the weight that it accorded to them").  That motion, then, is now before the court on remand.  Moreover, Mr. McKinney, has now supplemented his First Step Act motion with a second motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) (doc. 409)[2]—a motion that has been filed through counsel.[3]

---

[1] The court denied Mr. McKinney's subsequent motions for sentence reductions under Amendments 750 and 782 because his guidelines range remained 360 months to life even with the lower base offense level.

[2] Mr. McKinney's first motion was filed in December 2020 and was based on Mr. McKinney's arguments that his medical conditions placed him at an elevated risk of harm from COVID-19; that the offense underlying his § 851 enhancement no longer qualified as a serious drug felony; and that he was sentenced too harshly in light of disparities between crack and power cocaine offenses. The court denied the motion in part and dismissed the motion in part.

[3] Mr. McKinney filed his reply pro se, after indicating that he no longer wanted his appointed counsel working on his behalf.

**First Step Action Motion**

Since the court issued its memorandum and order denying Mr. McKinney's First Step Act motion, the Circuit has held that, once a defendant is deemed eligible for a reduction (as Mr. McKinney has been), the district court must calculate the defendant's Guidelines range prior to deciding whether to grant a reduction. *See United States v. Burris*, 29 F.4th 1232 (10th Cir. 2022) (citing *United States v. Brown*, 974 F.3d 1137, 1144 (10th Cir. 2020)). According to the Circuit, a correct Guidelines calculation is the "starting point" to any sentencing proceeding and "paramount" when sentencing under the First Step Act. *See Brown*, 974 F.3d at 1144–45. As noted by the court in its decision denying relief to Mr. McKinney, Mr. McKinney's Guidelines range remains unchanged (360 months to life) despite the new statutory minimum for Mr. McKinney's crack-cocaine offense.

Mr. McKinney's sentence, however, was largely driven by the crack cocaine Guideline. In his submissions, Mr. McKinney now asks the court to consider that, if sentenced today, he would likely receive the benefit of the Department of Justice's current policy recommending that judges sentence defendants convicted of crack offenses without regard to the 18:1 ratio for crack/powder cocaine that still exists in the Guidelines. In other words, he contends that the government would likely agree that Mr. McKinney should be sentenced utilizing a 1:1 ratio for crack and power cocaine. Eliminating the disparity would result in guideline range of 292-365 months on Count 1.[4]

---

[4] Eliminating the disparity would result in Mr. McKinney being responsible for 5,547 grams of cocaine, or a base offense level 30 and a total offense level of 36.

In response, the government agrees that the Department of Justice supports the Eliminating a Quantifiably Unjust Application of the Law ("EQUAL") Act, Senate Bill 79, which would eliminate the distinction between cocaine and crack cocaine for sentencing purposes under 21 U.S.C. § 841(b)(1)(A) and (B). The government further agrees that Mr. McKinney has correctly calculated the applicable guidelines range without the crack/powder disparity. While the government notes that Mr. McKinney's 360-month sentence on Count 1 is still within the range that eliminates the disparity, it concedes that the court sentenced Mr. McKinney to the low end of the applicable range and it supports a reduction in Mr. McKinney's sentence to 292 months on Count 1 with the 60-month consecutive sentence on Count 2, for a total term of 352 months.[5]

In light of the fact that Mr. McKinney is clearly eligible for a reduction under the First Step Act, the court exercises its discretion to reduce Mr. McKinney's sentence consistent with what the parties agree would be the applicable Guidelines range if Mr. McKinney were sentenced today. *See* 18 U.S.C. § 3553(a) (applicable guideline sentence is factor to consider in sentencing); *United States v. Mannie*, 971 F.3d 1145, 1158 & n.18 (10th Cir. 2020) (section 3553(a) factors are permissible, although not required, considerations when ruling on a First Step Act motion). No further reduction is warranted, however, in light of the remaining § 3553(a) factors as explained more fully below.

---

[5] The government indicates that it supports the reduction "if the court finds the defendant satisfies his burden," but it questions whether the pendency of the EQUAL Act is an "extraordinary and compelling" reason on its own to merit a reduction under § 3582(c)(1)(A). But the court is granting the limited reduction under 18 U.S.C. § 3582(c)(1)(B). *See United States v. Mannie*, 971 F.3d 1145, 1156 (10th Cir. 2020) (jurisdiction to hear a 2018 FSA motion arises from § 3582(c)(1)(B)).

**Compassionate Release Motion**

The court turns, then, to Mr. McKinney's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). The Tenth Circuit has endorsed a three-step test for district courts to utilize in connection with motions filed under § 3582(c)(1)(A). *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)). Under that test, a court may reduce a sentence if the defendant administratively exhausts his or her claim and three other requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction;[6] (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id.*[7] A court may deny compassionate-release motions when any of the three prerequisites is lacking and need not address the others. *Id*. at 1043. But when a district court grants a motion for compassionate release, it must address all three steps. *Id*. As will be explained, defendant has not come forward with extraordinary and compelling reasons sufficient to warrant a reduction in his sentence. Moreover, a reduction under § 3582(c)(1)(A) is wholly inconsistent with the applicable § 3553(a) factors.

In his motion, defendant contends that three extraordinary and compelling reasons warrant his immediate release.[8] First, Mr. McKinney argues that if he were sentenced today, Amendment

---

[6] A district court has the authority to exercise its discretion to independently determine the existence of "extraordinary and compelling reasons." *McGee*, 992 F.3d at 1043-44.

[7] The government does not dispute that Mr. McKinney has satisfied the statute's exhaustion requirement such that this court has jurisdiction to resolve the merits of the motion.

[8] Mr. McKinney has included his argument about the crack cocaine disparity as a fourth reason, but the court has addressed that argument in connection with Mr. McKinney's § 3582(c)(1)(B) motion.

5

790, which narrowed the relevant conduct guideline, would preclude him from receiving a four-level role enhancement. Second, he contends that his "striking" rehabilitation while in BOP custody warrants a sentence reduction. Lastly, Mr. McKinney argues that the prosecutor in this case, AUSA Terra Morehead, may have pressured witnesses to falsely inflate drug quantities in their testimony such that the reliability of the drug quantities attributed to Mr. McKinney by the court in its relevant conduct calculations is significantly undermined. Mr. McKinney seeks an evidentiary hearing with respect to this argument.[9] As will be explained, the court rejects each of these arguments as a basis for compassionate release.[10]

*Prosecutorial Misconduct*

The court begins with Mr. McKinney's argument concerning prosecutorial misconduct, as the court has recently addressed this issue in another case. *See United States v. Wesley*, 2022 WL 715094 (D. Kan. Mar. 10, 2022). In that case, the defendant Monteriel Wesley argued for a sentence reduction under § 3582(c)(1)(A) on the basis that the prosecutor, AUSA Terra Morehead, solicited false testimony about drug quantities from at least three witnesses and that one of those witnesses had admitted to testifying falsely about drug quantity in light of threats made by Ms. Morehead. Mr. Wesley sought an evidentiary hearing to resolve his prosecutorial misconduct

---

[9] Mr. McKinney has also written the court several letters expressing his concerns about Ms. Morehead.

[10] In a pro se supplement to his motion for compassionate release, Mr. McKinney asserts that he is "waiting" on certain information pertaining to his body mass index and his history of smoking to present to the court as another basis for compassionate release. He has not presented any additional information to the court regarding his health and the record before the court does not support the argument that Mr. McKinney's health constitutes an extraordinary and compelling reason for a sentence reduction.

6

allegations. Mr. McKinney's argument here mirrors the one made by Mr. Wesley and concerns the same prosecutor. As explained in detail in that opinion, which the court incorporates by reference here, the court concludes that Mr. McKinney's argument that the prosecutor in this case suborned perjury that resulted in an increased or inflated sentence falls squarely within § 2255's ambit. *See United States v. Williams*, 2020 WL 6059738, at *5 (D. Kan. Oct. 14, 2020) (compassionate release provision in § 3582(c)(1)(A) does not authorize relief based on a legal challenge to a defendant's conviction or sentence; claim that government violated defendant's Sixth Amendment rights would not be considered in § 3582(c) proceedings); *United States v. Warren*, 2020 WL 5253719, at *4 (D. Kan. Sept. 3, 2020) (§ 2255 motion, not compassionate release motion under § 3582, was appropriate avenue to address prosecutorial misconduct based on recording of defendant's conversations with counsel). Because this argument must be asserted in the context of a § 2255 petition, it is subject to authorization under § 2255(h) and Mr. McKinney has not obtained such authorization. The court, then, dismisses this aspect of the motion for lack of jurisdiction and has not considered this argument in analyzing whether Mr. McKinney has shown extraordinary and compelling reasons for release.[11]

To the extent the court must assess whether to grant or deny a certificate of appealability (COA) to Mr. McKinney in connection with any appeal of the court's dismissal of Mr. McKinney's § 3582(c) motion as a successive § 2255 petition, the court declines to issue a COA.

---

[11] At this time, the court does not address whether to transfer this aspect of the motion to the Circuit because it does not appear to the court that Mr. McKinney desires a transfer as an alternative to his § 3582(c) motion. If the court is not correct as to Mr. McKinney's wishes, the court will assess whether it is in the interests of justice to transfer this issue to the Circuit upon a request by Mr. McKinney.

To obtain a COA where, as here, the court has dismissed a filing on procedural grounds, the movant must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The court need not address the constitutional question if it concludes that reasonable jurists would not debate the court's resolution of the procedural one. *Id*. at 485. Because reasonable jurists would not debate the correctness of this court's conclusion that this aspect of Mr. McKinney's § 3582(c) motion must be construed as an unauthorized second § 2255 petition, the court declines to issue a COA.

*Amendment 790*

United States Sentencing Guideline § 1B1.3, which defines relevant conduct in determining a defendant's Guideline range, previously included in the definition of relevant conduct "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Amendment 790 struck that definition, such that § 1B1.3 now defines "relevant conduct" in the case of jointly undertaken criminal activity to include "all acts and omissions of others that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).  In other words, Amendment 790 clarified the "jointly undertaken criminal activity" analysis. *See United States v. Dahda*, 842 Fed. Appx. 243, 246 (10th Cir. Jan. 8, 2021).  Once a defendant's relevant conduct for sentencing purposes is determined, the same relevant conduct is used not only in determining the defendant's base

offense level but also for any role in the offense adjustments. *United States v. Nkome*, 987 F.3d 1262, 1269 (10th Cir. 2021).

At sentencing, the court determined that Mr. McKinney's relevant conduct included 511.5 grams of powder cocaine seized during a car stop in Guthrie, Oklahoma in January 2006. The court further concluded that Mr. McKinney was functioning as a leader with respect to two individuals present during that stop, James Luther Harris, Jr. and Shawnta Mays. Mr. Harris was driving the car at the time of the stop and Mr. McKinney and Ms. Mays were both passengers in the car. That evidence, coupled with evidence relating to three other participants, led the court to apply the four-level enhancement under U.S.S.G. § 3B1.1(a). In his motion for compassionate release, Mr. McKinney asserts that the evidence concerning the Guthrie car stop does not permit the conclusion that Mr. Harris and Ms. Mays were joint participants in Mr. McKinney's criminal activity as required by Amendment 790. According to Mr. McKinney, then, those individuals cannot be counted for purposes of the role enhancement under U.S.S.G. § 3B1.1(a).

Mr. McKinney contends that the only evidence linking Mr. Harris to the criminal conspiracy is a teletype received by police in Guthrie, Oklahoma indicating that two black males in a silver Dodge Magnum would be dropping a female off at a bus station in Carrollton, Texas and that the female would be in possession of cocaine. Contrary to Mr. McKinney's argument, the court's finding that Mr. Harris was a participant in Mr. McKinney's criminal activity was based not solely on the teletype, but on evidence concerning the car stop in Guthrie. Mr. Harris was traveling with Mr. McKinney with powder cocaine hidden in the vehicle and was driving the vehicle. But he deferred to Mr. McKinney when officers asked for consent to search the vehicle, noting that Mr. McKinney was the individual who had rented the vehicle. This evidence continues

to support the conclusion that Mr. Harris was a joint participant with Mr. McKinney for purposes of the Guthrie car stop and that Mr. Harris was acting at Mr. McKinney's behest in connection with Mr. McKinney's criminal activity.  In addition, the teletype is not the sole evidence upon which the court based its findings regarding Ms. Mays.  Ms. Mays was traveling in the vehicle with Mr. McKinney and Mr. Harris and, regardless of whether Mr. McKinney and Mr. Harris dropped her off at the bus station as indicated in the teletype, the evidence supported the conclusion that Mr. Kinney was using Ms. Mays as a courier for cocaine.  All of this evidence supports the conclusion that Mr. Harris and Ms. Mays were joint participants in Mr. McKinney's criminal conduct.  Mr. McKinney, then, has not demonstrated that he is entitled to any relief by virtue of Amendment 790.

*Rehabilitation*

Mr. McKinney next asserts that his rehabilitative efforts and clean disciplinary record in BOP custody supports a sentence reduction. In his lengthy incarceration, Mr. McKinney has received only two disciplinary reports (one in 2009 for throwing coffee at another inmate, one in 2010 for violating phone care and account policies).  He has earned his GED after spending 283 hours in the program; completed a 100-hour course in computer certification; completed a 120-hour course in custodial maintenance; and has completed dozens of other education programs, including the drug education program for which he is eligible. The court (and the government in its submissions) recognizes and commends Mr. McKinney's considerable efforts to rehabilitate himself during his term of imprisonment and encourages him to continue to take advantage of the rehabilitative opportunities he has been afforded.  Nonetheless, the court cannot conclude that the

record here establishes extraordinary and compelling circumstances for purposes of early release. As an initial matter, the sheer number of hours that Mr. McKinney has spent in programming is not surprising given the length of time that he has spent in prison. Moreover, Congress does not consider rehabilitation alone to be an extraordinary and compelling reason for purposes of compassionate release. *See* 28 U.S.C. § 994(t)). And, as explained in this opinion, Mr. McKinney has not come forward with any other extraordinary and compelling reasons, unique to him, that might justify early release. The court, then, rejects this argument as a basis for a sentence reduction. *See United States v. Mora*, 2021 WL 5711087, at *2 (10th Cir. Dec. 2, 2021) (no flaw in district court's denial of early release despite rehabilitative efforts where defendant had garnered extensive coursework and involvement in rehabilitative programs largely because he had spent so many years in prison.); *United States v. Rodriguez*, 837 Fed. Appx. 652, 653 (10th Cir. 2021) (same).

*Section 3553(a) Factors*

The government also opposes Mr. McKinney's motion on the grounds that the § 3553(a) factors weigh against early release in light of the nature and seriousness of his offenses and the need to provide just punishment for those offenses. On this point, the court concludes that continued incarceration is necessary under the specific circumstances presented here. In other words, the court finds that compassionate release would materially depart from an appropriate § 3553(a) sentence. The § 3553(a) factors include (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of

the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a)(1)–(6). Applying those factors here, the court declines to reduce defendant's sentence beyond the limited reduction it found appropriate under Mr. McKinney's First Step Act motion.

The court begins with the significant quantity of drugs attributed to Mr. McKinney and the inherent violence associated with the related firearms offenses. But more than that, Mr. McKinney engaged in aggravated assault in connection with a drug transaction—he attempted to shoot another individual in the face during the transaction but the firearm did not function properly. During trial preparation, multiple witnesses reported threats communicated to them by individuals associated with Mr. McKinney. Another witness reported that Mr. McKinney asked him to re-write an affidavit in a manner that was favorable to Mr. McKinney. When that witness refused, Mr. McKinney threated to shoot the witness. Five inmates reported to law enforcement that Mr. McKinney made threats directed at the prosecutor and her family. Mr. McKinney also has a substantial criminal history, including numerous drug offenses. Simply put, Mr. McKinney has not demonstrated to the court that his early release comports with the § 3553(a) factors.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for sentence reduction under § 404 of the First Step Act (doc. 357) is **granted in part and denied in part.** The court **reduces** Mr. McKinney's sentence on Count 1 to **292 months** to run consecutively with 60 months on Count 2 for a total term of **352 months**. All other provisions of the judgment dated March 6, 2009 shall remain in effect.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (doc. 409) is **denied in part and dismissed in part**.

**IT IS FURTHER ORDERED BY THE COURT THAT** the court **declines** to issue a certificate of appealability on that portion of the court's memorandum and order dismissing defendant's § 3582(c) motion as an unauthorized successive § 2255 motion.

**IT IS SO ORDERED.**

Dated this __18th__ day of April, 2022, at Kansas City, Kansas.

     s/ John W. Lungstrum
_____
John W. Lungstrum
United States District Judge